# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

C.A. NO.: 07-10908-JLT

| | |
|---|---|
| H. MARK WHITE, Individually and as next friend for his son HENRY T. WHITE, | ) ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) |
| THE FESSENDEN SCHOOL, a private entity, and PETER DRAKE, DANIEL KILEY, and WENDY PEARRE, in their individual and professional capacities, | ) ) ) ) ) ) ) |
| Defendants. | ) |

| | |
|---|---|
| George P. Butler, III (BBO #541820)<br>Leslie A. F. Calhoun (admitted *pro hac vice* MI P67659)<br>DICKINSON WRIGHT PLLC<br>Attorneys for Plaintiffs<br>500 Woodward Avenue – Suite 4000<br>Detroit, Michigan  48226-3425<br>(313) 223-3500<br>Fax:  (313) 223-3598<br>E-Mail:  gbutler@dickinsonwright.com<br>lcalhoun@dickinsonwright.com | James T. Scamby (BBO #629144)<br>TUCKER, HEIFETZ & SALTZMAN, LLP<br>Attorney for Defendants<br>100 Franklin Street<br>Boston, Massachusetts  02110<br>(617) 557-9696<br>Fax:  (617) 227-9191<br>E-Mail: scamby@ths-law.com |
| Robert Y. Murray<br>RAMSEY & MURRAY<br>Co-Counsel for Plaintiffs<br>225 Friend Street<br>Boston, Massachusetts  02114<br>(617) 723-8000<br>Fax:  (617) 723-3893<br>E-Mail:  murray@rmboston.net | Christina P. Marisam<br>WILMERHALE, LLP<br>Attorneys for Defendants<br>60 State Street<br>Boston, Massachusetts  02109<br>(617) 526-6000<br>Fax: (617) 526-5000<br>E-Mail: Christina.marisam@wilmerhale.com |

## PLAINTIFFS' TRIAL BRIEF

Pursuant to the Court's Pre-Trial/Trial Order entered on August 29, 2008, Plaintiff H. Mark White, individually and as next friend to his son, Henry White, ("Plaintiffs") provides the following as Plaintiffs' Trial Brief.

## I.    <u>REQUESTS FOR RULINGS</u>

Plaintiffs request rulings in their favor on each of their following claims.

### A.    **Fraud/Misrepresentation**

Where Fessenden made false representations of a material facts regarding its reenrollment and nondiscrimination policies with knowledge of their falsity for the purpose of inducing the Whites to apply to Fessenden for Henry's kindergarten education, and reenroll Henry for first and second grade, and Henry was damaged as a result, should the finder of fact rule in favor of Plaintiffs and award all appropriate damages?   Plaintiffs answer yes.

Under Massachusetts law, a plaintiff must show that the defendant "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage."   <u>Stolzoff v. Waste Systems International, Inc.</u>, 58 Mass. App. Ct. 747, 759 (2003).   While a fact is defined as something "susceptible of knowledge," "a statement of opinion may be actionable where the speaker possesses superior knowledge concerning the subject matter to which the misrepresentations relate, or where the opinion is 'reasonably interpreted by the recipient to imply that the speaker knows facts that justify the opinion.'" <u>Stolzoff</u>, 58 Mass. App. Ct. at 760 (internal citations omitted).

Fessenden's handbook, website, and reenrollment contract are all material representations that Plaintiffs relied upon as true. Plaintiffs relied upon communications made by Defendants

and through other promotional materials regarding nondiscrimination and reenrollment.    In particular, Plaintiffs relied on such by applying for admission to the Fessenden School for Henry's kindergarten year and for reenrollment for his first and second grade years.    Plaintiffs also relied upon Fessenden's accreditation with AISNE.

Despite this, Defendants did not follow their stated policies regarding nondiscrimination and reenrollment.    Deposition testimony and other pertinent documents clearly demonstrate that Defendants had knowledge that their stated policies and practices were not being followed with regard to children with, or perceived to be with disabilities.    Nor were they following these policies and practices in Henry's case.    As a result, Plaintiffs suffered damages.

Plaintiffs request that the finder of fact rule in their favor on the count of fraud and misrepresentation.

### B.    Massachusetts Consumer Protection Act, M.G.L. 93A

Fessenden engaged in deceptive and unfair trade practices when it placed misleading and deceptive language on its website and promotional materials. Plaintiffs suffered damage as a result, and sent Defendants a demand letter pursuant to M.G.L. 93A(2)(a).    Defendants failed to respond in good faith to this letter, as the letter itself further demonstrates that Fessenden's policies and practices, as advertised and promised, are not followed by the school.    Should the finder of fact rule in favor of Plaintiffs and award Plaintiffs triple damages and actual attorneys fees?    Plaintiffs answer yes.

Under Massachusetts Consumer Protection Act ("MCPA"), unfair and deceptive trade practices are unlawful.    M.G.L. 93A(2)(a).    The Act specifically states that the Massachusetts Attorney General "may make rules or regulations interpreting the provisions of subsection 2(a) of this chapter."    M.G.L. 93A(2)(c).    Massachusetts Attorney General Regulation, 940 CMR

3.10(16) specifically addresses the question of whether an educational institution's use of deceptive or misleading language may be considered to be an unfair or deceptive trade practice within the meaning of the Act, and has concluded that:

> The use of language in any form which has the tendency or capacity to mislead or deceive students, prospective students, or the public is an unfair and deceptive trade practice.

Plaintiffs relied on the statements made on Fessenden's website, promotional and handbook materials regarding nondiscrimination and re-enrollment.   Testimony and documentation obtained during discovery demonstrates that defendants' policies and promises do not comport with their practices.   Henry was underserved for the things that should have been included in his tuition.   Plaintiffs were damaged as a result of Defendants' unfair and deceptive trade practices.   Deposition testimony, further expert and documentary evidence clearly demonstrate that Defendants engaged in unfair and deceptive trade practices and that Plaintiffs relied on them as true, and suffered damages.

Plaintiffs request that the Court rule in their favor on the count of violation of the MCPA. Plaintiffs request that this count be submitted to the jury.

### C.      Breach of Contract

Fessenden made enforceable promises to Plaintiffs in its handbook and promotional materials regarding its treatment of individuals, particularly with regard to nondiscrimination and reenrollment.   Defendants also made numerous enforceable promises to Plaintiffs with regard to developing and implementing an educational plan and other reasonable accommodations for Henry's actual or perceived disabilities. Defendants breached their contracts with Plaintiffs, and Plaintiffs have suffered damages as a result.   Should the finder of fact rule in favor of Plaintiffs for their breach of contract claim and award all appropriate damages?   Plaintiffs answer yes.

To establish a claim for breach of contract under Massachusetts law, a plaintiff must prove that a valid and binding contract existed and that the defendant violated the terms of that agreement.  Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999).

Deposition testimony already given supports these claims, and further expert and documentary evidence provides support in this regard.

Plaintiffs request that the finder of fact rule in their favor on the count of breach of contract.


**D.      Interference  With  A  Contractual  Or  Advantageous
          Relationship**

Defendants Peter Drake, Wendy Pearre and Daniel Kiley caused the contract and advantageous relationship between Plaintiffs and the Fessenden School by their actions outside the proper scope of their employment.   Drake, Pearre, and Kiley intentionally induced or persuaded the Fessenden School not to perform its obligations under the contract and its advantageous relationship.  Drake, Pearre, and Kiley's actions were intentional and improper in motive and in means.  As a result, Plaintiffs have suffered damages.  Should the finder of fact rule in favor of Plaintiffs for their intentional interference claim and award all appropriate damages?  Plaintiffs answer yes.

To establish a claim for intentional interference with a contractual or advantageous relationship under Massachusetts law, a plaintiff must allege facts to show that defendants knowingly induced the School to break a contract or end an advantageous relationship with them.  Shea v. Emmanuel Coll., 425 Mass. 761 (1997).  Additionally, Massachusetts courts have recognized as sufficient damages for an interference claim emotional distress damages.  See, e.g., Draghetti v. Chmielewski, 416 Mass. 808 (1994).

Defendants failed to notify Mr. White that Henry would not be permitted to re-enroll at Fessenden and he missed the application window for several other private schools resulting in loss of a pecuniary nature.   Further, Mr. White incurred expenses in his efforts to verify or debunk Defendants' claim that Henry was not academically equipped to continue at Fessenden, and as Defendants will not doubt attest, by being excluded from Fessenden, Henry has lost significant opportunities that flow to Fessenden alumni.   Also, named defendants denied the Whites access to Henry's teacher, and interfered with the ability to form a collaborative and productive parent-teacher and teacher-parent relationship. This undoubtedly caused interferences with Henry's academic progress and socialization within the school. Deposition testimony already given supports these claims, and further expert and documentary evidence provides support in this regard.

Plaintiffs request that the finder of fact rule in their favor on the count of intentional interference.

### E.      Negligence

Defendants owed Plaintiffs a duty of care to educate and not to harm Henry White and the Whites, which they breached.  Defendants' breach actually and proximately caused Plaintiffs harm. Plaintiffs have suffered damages as a result of Defendants' breaches.

In Massachusetts, a plaintiff must prove that (1) defendants owed plaintiffs a duty, (2) defendants breached the duty, (3)  the breach was a proximate cause of the ensuing harm, and (4) the breach was the actual cause of the harm.  McCloskey v. Mueller, 446 F.3d 262, 267 (D. Mass 2006).  Massachusetts courts look to the relevant portions of the Restatement of Torts in order to determine whether a defendant owes a plaintiffs a duty.  McCloskey, supra.

The duty that Defendants owed to Plaintiffs was the duty to employ employees who would exercise reasonable care towards Fessenden students, including Henry.  Generally, a defendant does not have the duty to control the conduct of a third party in order to prevent him from causing harm; however there are limited circumstances in which such a duty will be found. Restatement (Second) of Torts § 315 (1965).  One such circumstance is when there is a special relationship between the parties, such as the relationship between a school and a student. McCloskey, 446 F.3d at 268, citing Marquay v. Eno, 139 N.H. 708 (1995) ("Take, for example, a school, which may be said to assume a duty of care toward its students and, thus, may be held liable for foreseeable harm that comes to then if it defaults on that duty.").  Defendants had a duty to prevent foreseeable harm from befalling the students that were entrusted to their care.

Defendants also breached their duty to the Plaintiffs by barring the Whites from having one-on-one access to Henry's teacher.  Denying a parent and teacher to form a relationship of collaboration for the benefit of the student is completely unwarranted.  In doing this, Defendants breached their duty to the Whites to provide their son with proper collaboration needed for a child's education.  AISNE and other educational standards provide for the appropriate standard to which Fessenden held itself with regard to Henry and other children.

Fessenden and its administrators received notice, in the form of prior parental complaints, the Education Matters Report, and at least one other lawsuit, that its employees used improper, unethical, discriminatory and harmful practices in dealing with students who either were actually or were perceived to be disabled.  Therefore, Defendants were on notice that, unless they took action, it was foreseeable that these same types of harms would occur in the future to students who were disabled or were perceived as disabled.  Despite actual knowledge that Fessenden employees singled out students on the basis of a suspected disability and engaged in unlawful

discriminatory behavior towards those students, the School and individual Defendants failed to take any action that would prevent this harm from happening in the future.  In addition, Defendants were negligent in refusing to allow Plaintiff Mark White access to Henry's instructors at Fessenden.  As a result of Defendants' inaction, Henry was subjected to the very discriminatory behavior of which the School and its administrators had been forewarned. Deposition testimony has already established this claim, and other testimony including expert testimony will support these claims.

Plaintiffs request that the finder of fact rule in their favor on the count of negligence.


**F.      Intentional Infliction of Emotional Distress**

Fessenden and named defendants intended to inflict emotional distress and knew or should have known that emotional distress was likely to result.  Defendants' conduct was extreme, outrageous, and beyond all bounds of decency.  Their actions caused Plaintiffs' great and severe distress.  Should the finder of fact rule in favor of Plaintiffs for their intentional infliction of emotional distress claim and award all appropriate damages?  Plaintiffs say yes.

Massachusetts courts follow the Restatement's view of IIED.  Under Massachusetts law, a plaintiff will state a cognizable claim for IIED if he or she alleges: (1) that the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his or her conduct; (2) that the defendant's conduct was extreme and outrageous, beyond all bounds of decency, and utterly intolerable in a civilized community; (3) that defendant's actions were the cause of the plaintiff's distress; and (4) that the plaintiff's emotional distress was severe and of a nature that no reasonable person could be expected to endure it.  Brown v. Nutter, McClennen & Fish, 45 Mass. App. Ct. 212 (1998).

"The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress . . . The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge." Restatement (Second) of Torts, § 46, Comment F[1].  If reasonable people could differ as to whether the conduct at issue was extreme and outrageous, then there is an issue for the fact finder. Vittands v. Sudduth, 49 Mass. App. Ct. 401 (2000).  Moreover, in assessing conduct, "a trier of fact would be entitled to put as harsh a face on the actions . . as the basic facts would reasonably allow." Richey v. American Auto. Assn., 380 Mass 835, 839 (1980).

Defendants in this case behaved in an extreme and outrageous manner both in terms of in denying Henry a reenrollment contract and in dealing with Henry's actual or perceived disability. Defendants purposefully and maliciously denied Henry a reenrollment contract for his third grade year on the basis of an actual or perceived disability, for other reasons having nothing to do with the true motive underlying their actions. Defendants also punished Henry for incidents involving fecal incontinence resulting from his disability.  Defendants sent Henry home from school without allowing him to clean himself or change his clothes. Henry's parents witnessed numerous occasions where he was forced to sit on a bench outside Defendant Pearre's office in soiled clothes until his parents picked him up and took him home.  Defendants also punished Henry by forcing him to stay home for part of his first-grade year after Henry suffered an incident of fecal incontinence that particularly repulsed Defendants.  Defendants' tortuous actions interfered with Henry's academic and socialization progress.

---

[1] See also Boyle v. Wenk, 378 Mass 592, 596 (1979) (Citing § 46, Comment F for the proposition that "Conduct otherwise reasonable may become tortious when directed at an individual known to be particularly susceptible to infliction of emotional distress"); Drejza v. Vaccaro, 650 A.2d 1309 (CA DC 1994) ("[T]he conduct to be examined should not be considered in a sterile setting, detached from the milieu in which it took place.").

Defendants' actions are particularly egregious considering the fact that the target of their behavior was a second grade boy.  As noted above, conduct that may otherwise be non-tortious in character may become tortious if the recipient of the behavior in particularly susceptible to emotional distress.  In this case, Defendants understood Henry to be an emotional young boy, and persisted in their malicious behavior towards him, despite their knowledge that Henry was susceptible to emotional distress.  Henry's age alone should be evidence towards this claim in any event.  Deposition testimony supports these claims, and further expert and documentary evidence clearly demonstrate that Defendants acted in an outrageous manner towards Henry.

Plaintiffs request that the finder of fact rule in their favor on the count of intentional infliction of emotional distress.


### G.    Violation of the Massachusetts Civil Rights Act

Defendants engaged in intimidation, threats and coercion when it engaged in an ongoing scheme of harassment, the cancellation of a contract securing future benefit, and the termination of a legal relationship.  Defendants' acted in this way in response to Plaintiffs' attempt to exercise their secured rights.  Plaintiffs suffered damages as a result.  Should the finder of fact rule in favor of Plaintiffs for their Massachusetts Civil Rights Act count and award all appropriate damages?  Plaintiffs answer yes.

When initiated by a plaintiff's exercise of his or her secured rights, an ongoing scheme of harassment, the cancellation of a contract securing future benefit, and the termination of a legal relationship, have all been found to constitute the required "intimidation, threat, or coercion" element under the MCRA.  Acciavatti v. Professional Services Group, Inc., 982 F.Supp. 69, 78-79 (D. Mass., 1997).  See also Redgrave v. Boston Symphony Orchestra, Inc., 399 Mass. 93 (1987).

In this case, Defendants engaged in actions prohibited by the MCRA when they forced Henry from the Fessenden community.  For example, Plaintiffs have alleged that Defendants, by deliberately failing to follow their own policies regarding reenrollment and by wrongfully denying Henry a reenrollment contract for a discriminatory reason, coerced Plaintiffs to forfeit rights that they are afforded under the ADA.  Defendants, through the application of force and with a discriminatory intent, prevented Mr. White from reenrolling his son at Fessenden, and Henry the right to continue to attend Fessenden, rights that Mr. White and his son would have enjoyed if not for Defendants' unlawful and discriminatory conduct.  Deposition testimony, further expert and documentary evidence clearly demonstrate that Defendants interfered with Plaintiffs' exercise of their rights through threatening, intimidating and coercive acts.

Plaintiffs request that the finder of fact rule in their favor on their Massachusetts Civil Rights Act claim.


### H.        Violations of Americans with Disabilities Act

The Fessenden, School is a place of public accommodation.  The definition of a public accommodation includes "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education."  Henry has an actual or perceived disability, as defined by the ADA: that is, Henry actually had irritable bowel syndrome and cognitive impairment and/or a learning disability.  The Fessenden School perceives Henry as a person suffering from these disabilities.  Henry's actual or perceived disabilities substantially limit one or more of his major life activities, such as the ability to go to the bathroom, the ability to obtain an education, to concentrate, socialization and learning.  Henry has a record of such an impairment, and is or was at all times relevant regarded as having such an impairment.  All

medical conditions are covered in this definition of "disability," whether temporary or permanent, contagious or not, chronic or acute, congenital or acquired.

The Fessenden School denied Henry, on the basis of his disability, directly, or through contractual, licensing, or other arrangements, the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the Fessenden School. It further denied Henry, on the basis of his disability, directly, or through contractual, licensing, or other arrangements, the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation equal to that afforded to other individuals.  The school, directly or through contractual or other arrangements, utilized standards or criteria or methods of administration: (i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control.

Deposition testimony already given supports these claims, and further expert and documentary evidence provides support in this regard.

Plaintiffs request that the finder of fact rule in their favor on their ADA claim.


**I.     Requests for Injunctive Relief**

Plaintiffs request that the Court grant the following injunctive relief:

1.     That Fessenden be enjoined from further discrimination on the basis of an actual or perceived disability.

2.     That Henry White be reinstated and accommodated both academically and physically in a manner appropriate to ensure that Henry's disability and any failure to accommodate such are not the cause of his inability to meet age/grade level appropriate progress with respect to the Fessenden curriculum and that any remedial education necessary to compensate Henry's wrongful exclusion be immediately provided for as long as necessary.

3.      That Fessenden is ordered to take no retaliatory or harassing action against Henry and his parents and ensure that no one in the Fessenden community act in a way that is retaliatory or discriminatory against Henry and his parents on account of his acting to procure this Order or on account of Henry's disability or perceived disability.

## II.      REQUEST FOR INSTRUCTIONS

Plaintiffs propose the following Jury Instructions and reserve the right to amend as may become necessary or appropriate.

### A.      Count I—Violation of the Americans with Disabilities Act

`      The plaintiffs in this case, H. Mark White, as the next friend for his son, Henry T. White (whom we shall call "Mr. White" and "Henry," respectively or, together, "Plaintiffs") claim that Henry has an actual or perceived disability, as contemplated by the Americans with Disabilities Act, or the "ADA."  The ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

First, you must determine that the Mr. White and Henry have shown that the Fessenden School is a place of "public accommodation" as defined by the ADA.  This definition includes "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education."

Next, you must determine whether the plaintiffs have established that Henry has an actual or perceived disability, as defined by the ADA: that is, whether Henry actually had irritable bowel syndrome and a cognitive impairment and/or learning disability.  Even if you do not

believe that Henry suffers from irritable bowel syndrome, a cognitive impairment and/or a learning disability, you must determine whether the Fessenden School perceived Henry as a person suffering from these disabilities.

In addition, in determining whether Henry suffers from or was perceived as having a disability, you must determine that these disabilities substantially limit one or more of his major life activities, such as the ability to go to the bathroom, the ability to obtain an education, to concentrate, socialization and learning.

When considering whether Henry's physical impairment substantially limits one or more of his major life activities, you must consider that to qualify as a "substantial" limitation on a major life activity, the limitation must be 'considerable' or 'to a large degree.'  The term does not include impairments that interfere in only a minor way with the performance of major life activities.

At the other end of the spectrum, however, the impairment does not need to be so substantial that the plaintiff is completely incapable of performing the major life activity in question.  The ADA addresses substantial limitations on major life activities, not utter inabilities. A plaintiff's impairment qualifies as one that "substantially limits" a major life activity if the plaintiff is significantly restricted as to the condition, manner or duration under which the average person in the general population can perform that same major life activity."

In determining whether the disability was actual or perceived, you also must analyze whether Henry has a record of such an impairment; or whether he is or was at all times relevant regarded as having such an impairment.[2]

---

[2]   Sources:  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002) (quoting Webster's Third New Int'l Dictionary 2280 (1976)) ; *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998); 29 C.F.R. § 1630.2(j)(1)(i), (ii) (2004).

All medical conditions are covered in this definition of "disability," whether temporary or permanent, contagious or not, chronic or acute, congenital or acquired.

Whether a person has a disability under the ADA is an individualized inquiry.   The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.   The determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis.[3]

Henry may also be protected by the ADA if he has a "record of such an impairment." This is the case if Henry has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.   In order to establish a "record of such an impairment," the Plaintiffs must prove that the Henry's record "substantially limits a major life activity."[4]

Finally, Henry may be protected by the ADA if he has a perceived disability, or, in other words, if he is "regarded as impaired."   The "regarded as impaired" language is designed to combat erroneous stereotypes about impairments that are not, in themselves, substantially limiting.   The regulations provide three tests for determining whether an individual is regarded as impaired:

> • The individual may have an impairment that is not substantially limiting but is treated by the Defendants as constituting a substantially limiting impairment.

> • The individual may have an impairment that is substantially limiting only because of the attitudes of others toward the impairment.

---

[3] SOURCE: FED-JI CH 172(4)(c)

[4] SOURCE: FED-JI CH 172(4)(d)

• The individual may have no impairment at all but is regarded by the Defendants as having a substantially limiting impairment.[5]

If you determine that the Fessenden School is a place of public accommodation and that Henry suffers from an actual or perceived disability, you must now determine whether Henry was discriminated against because of that disability.  There are three ways against which Henry may have been discriminated against under the ADA:

### a)     Denial of Participation

If the Fessenden School denied Henry, on the basis of his disability, directly, or through contractual, licensing, or other arrangements, the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the Fessenden School.

### b)     Participation in unequal benefit

If the Fessenden School denied Henry, on the basis of his disability, directly, or through contractual, licensing, or other arrangements, the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

### c)     Separate benefit

If the Fessenden School provided Henry, on the basis of his disability, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless that provision was necessary to provide Henry with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.

---

[5] SOURCE: FED-JI CH 172(4)(e)

In determining whether the Fessenden School discriminated against Henry, you must keep in mind that discrimination includes, but is not limited to:

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

> (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

Additionally, you must keep in mind that notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability must not be denied the opportunity to participate in such programs or activities that are not separate or different.

You may also find that the Fessenden School took discriminatory action if you find that the school, directly or through contractual or other arrangements, utilized standards or criteria or methods of administration: (i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control.

### B.    Count II—Fraud/Misrepresentation

### 1.    Intentional Misrepresentation:

The plaintiffs may recover money damages from the defendants if they prove the following by a fair preponderance of the credible evidence:

> 1. That the defendants made a false statement to them, and that statement concerned some fact that a reasonable person would consider important to the decision that the plaintiffs were about to make; a fact is "material" if a reasonable person would attach importance to it in determining his choice of action in the transaction in question;

> 2. That when the defendants made the statement, the defendants either knew that the statement was false, or recklessly made the statement by willfully disregarding its truth or falsity;

> 3. That the defendants made the false statements with the intention that the plaintiffs would rely on that statement in making his decision;

> 4. That in making their decision, the plaintiffs did in fact rely on the defendants' statements as true, and that their reliance was reasonable under the circumstances; and

> 5. That plaintiffs suffered some financial loss as a result of relying on the defendants' false statement.

If Mr. White and Henry have proved these five things by a preponderance of the credible evidence, your verdict will be for them, and you must then go on to determine the amount of money damages to be awarded to them.  If Mr. White and Henry have failed to prove any one of these five things, then your verdict must be for the defendants.[6]

### a)    Statement of Fact

The defendants can be held responsible for an intentional or reckless misrepresentation about an existing fact.  A fact, as opposed to an opinion, estimate, or intention, is a statement

---

[6] Source: CIVJIII MA-CLE 20-1.

whose truth or falsity is capable of being determined with certainty.  The defendants may be held responsible for a statement of fact that pertained to a future event if you determine that the defendants had greater expertise about the particular future event that was being discussed.  The defendants can also be held responsible for a misrepresentation about his or her own opinion, estimate, or intention, but only if he or she intentionally misrepresented that opinion, estimate, or intention.[7]

### b)      Material Statement

A misrepresentation is material if it is shown that the misrepresentation was one of the principal grounds (although not necessarily the sole ground) that caused the plaintiffs to take the particular action that the defendants intended him to take as the result of such representations, and that otherwise, the plaintiffs would not have taken such action.[8]

### c)      The Falsity of the Statement

The defendants are liable if any of them made a false statement of fact, knowing it to be false.  Likewise, if the defendants made an unqualified statement about facts, the truth or falsity of which the defendants could have determined with certainty, and gave Mr. White and/or Henry the reasonable impression that he or she was speaking of his or her own knowledge, then the defendants are not excused from liability if he or she did not in fact know whether that statement was true or false.  The law regards such willful disregard of the facts as equivalent to an intentional misrepresentation.  Actual intent to deceive need not be proven.[9]

---

[7] Source: CIVJIII MA-CLE 20-1.1.

[8] Source: CIVJIII MA-CLE 20-1.6

[9] Source: CIVJIII MA-CLE 20-1.1

Additionally, deception need not be direct to come within the reach of the law.  If you find that the defendants' statements and conduct combined were calculated to mislead the plaintiffs, that they did, in fact, mislead the plaintiffs, and that the plaintiffs were acting reasonably, then this is enough to constitute intentional misrepresentation.[10]

### d)  Statement Made with Intent that Plaintiffs Would Rely on It

Mr. White and Henry must also prove that the defendants intended that the plaintiffs would rely on the misrepresentation.

Where the plaintiffs have not dealt with the defendants on a one-on-one basis, the plaintiffs must prove that they are individuals, or one of a class of persons, whom the defendants had reason to expect would act or refrain from acting on the misrepresentation.[11]

### e)  Reliance

The plaintiffs must prove that they relied on the defendants' misrepresentation. If Mr. White's and Henry's reliance on the defendants' statement was reasonable under the circumstances, then they may recover.  Ordinarily, the plaintiffs are not required to investigate the truth of assertions that are made to them.  The recipient of a fraudulent misrepresentation of fact is ordinarily justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation.

If the defendants' representations were such as to induce the plaintiffs not to undertake an independent examination of the pertinent facts, lulling him into placing confidence in the defendants' assurances, then the plaintiffs' failure to ascertain the truth through investigation does

---

[10] Source: CIVJIII MA-CLE 20-1.3

[11] Source: CIVJIII MA-CLE 20-1.5

not preclude recovery.   This is so even though the defendant's representations were not consciously false.

If the plaintiffs have proved the five elements as explained earlier by a fair preponderance of the credible evidence, then you must go on and determine the amount of money damages to be awarded.  By instructing you on damages, I am not suggesting how you should decide this case; I am only informing you what the law is in the event that you reach the issue of damages.  In a case where there has been an intentional or reckless misrepresentation, the law provides that the plaintiffs may recover the benefit of what they were promised by the defendants.  In other words, if you reach the issue of damages, you should award the plaintiffs a sufficient amount of money to put them in the position that they would have been in if the situation had been as represented by the defendants.

In addition, if the misrepresentation caused the plaintiffs to incur any additional expenses that were reasonably foreseeable as a result of the defendants' misrepresentation, then you are to award the plaintiffs an additional amount of money that will compensate them for those additional expenses that they incurred.[12]

## 2.   Negligent Misrepresentation

The plaintiffs may recover money damages from the defendants if they prove the following by a fair preponderance of the credible evidence:

> 1. That the defendants made a false statement to the them, and that this statement concerned some fact that a reasonable person would consider important to the decision that the plaintiffs were about to make;
>
> 2. That when the defendants made the statement, the defendants negligently failed to determine whether it was true or false. The

---

[12] Source: CIVJIII MA-CLE 20-1.8

defendants acted negligently if they made a statement about an important fact without using the amount of care a reasonable person would use in those circumstances to see that what he or she said was true.

3. That the defendants made the false statement with the intention that the plaintiffs would rely on that statement in making his decision;

4. That in making his decision, Mr. White did in fact rely on the defendants' statement as true, and that his reliance was reasonable in the circumstances; and

5. That Mr. White and Henry suffered some financial loss as a result of relying on the defendants' false statement.

If the plaintiffs have proved these five things by a preponderance of the credible evidence, your verdict will be for the plaintiffs, and you must then go on to determine the amount of money damages to be awarded to the plaintiffs.[13]

If the defendants did negligently misrepresent an important fact with the intention that the plaintiffs would rely upon it, and the plaintiffs did rely upon it and suffered a financial loss, then you are to award the plaintiffs an amount of money that is the difference between what Mr. White paid for the services of the Fessenden School and what it would have been worth if the true quality of those services had been known.

In addition, if you determine that this misrepresentation caused the plaintiffs to incur any additional expenses that were reasonably foreseeable as a result of the defendants' negligence, then you are to award the plaintiffs an additional amount of money that will compensate them for those additional expenses that they incurred.[14]

### C.    Violation of Section 93A of the Massachusetts Consumer Protection Act

---

[13] Source: CIVJIII MA-CLE 20-2

[14] Source: CIVJIII MA-CLE 20-2.1

The plaintiffs also claim that the defendants violated section 93A of the Massachusetts Consumer Protection Act.

### a)      Demand Letter

The first element that Mr. White and Henry must prove by a preponderance of the evidence is that they mailed or delivered an adequate demand letter to the defendants at least 30 days prior to commencing this action.  This action was filed on April 20, 2007.

By "adequate, " I mean that the demand letter must:

1. identify the plaintiffs as the claimant;

2. reasonably describe the unfair or deceptive act or practice;

3. reasonably describe the injury suffered;

4. specify the relief sought; and

5. include at least one of the following indications that the claimants were seeking relief under Chapter 93A:

• an express reference to Chapter 93A;

• an express reference to the Consumer Protection Act;

• an assertion that the claimants' rights as a consumer have been violated;

• an assertion that the plaintiffs will pursue multiple damages and attorney fees should relief be denied; or

• an assertion that the defendants acted in an "unfair or deceptive manner."[15]

### b)      Response to Demand Letter

You are also being asked to determine if the defendants responded to the plaintiffs' demand letter, and, if the defendants did respond, whether the response was made in bad faith

[15] Source: CIVJIII MA-CLE 16-1.2

with knowledge or reason to know that the complained of act or practice was an unfair or deceptive act or practice.  The plaintiffs have the burden of proving, by a preponderance of the evidence, that the defendants' response to the plaintiffs' demand letter was made in bad faith with knowledge or reason to know that the act complained of amounted to an unfair or deceptive act or practice committed in a business context.

Bad faith is a state of mind.  It is an intentional, arbitrary, reckless, or indifferent disregard of the legitimate interests of the plaintiffs. In determining whether the defendants acted in bad faith, consider whether the defendants' response was objectively unreasonable.  You may take into account whether the defendants investigated the facts of the plaintiffs' complaint or considered legal precedent.[16][17]

<div align="center">

**c)**      **Defendants Dealing in Trade or Commerce**

</div>

The plaintiffs must prove, by a preponderance of the evidence, that the defendants were engaged in "trade or commerce" in their dealings with the plaintiffs, or in other words, that the defendants' conduct took place in a business context.  The phrase "trade or commerce" includes the advertising; the offering for sale, rent, or lease; the sale, rent, lease, or distribution of any services or any property, tangible or intangible, real, personal, or mixed; and any security, contract of sale, or any other trade or commerce directly or indirectly affecting the people of this Commonwealth.  This definition is open-ended.  The specific activities enumerated are not intended to be an exhaustive list.

---

[16] The fact finder shall also award either double or treble damages if the defendant's refusal to grant relief in response to the plaintiff's demand letter "was made in bad faith with knowledge or reason to know that the act or practice complained of" violated Chapter 93A. G.L. c. 93A, § 9(3); *Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 582-83, 441 N.E.2d 1027, 1031-32 (1982); *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 627-28, 382 N.E.2d 1065, 1070-71 (1978).
[17] Source: CIVJIII MA-CLE 16-7.10

In determining whether the plaintiffs' dealings with the defendant took place in a business context, you should examine the following factors:

1. the nature of the transaction,

2. the character of the parties,

3. the activities engaged in by the parties,

4. whether there were past similar transactions,

5. whether the defendants' motivation was personal or business-related, and

6. whether the defendants actively participated in the transaction. A transaction need not be in the ordinary course of business so long as it takes place in a business context.[18]

### d)      Unfair or Deceptive Act or Practice

If you determine that the defendants were acting in a business context, you must then decide whether the defendants' actions toward the plaintiffs amounted to an unfair or deceptive act or practice.  The phrase "unfair or deceptive" is broad and flexible, and it is intentionally so.  You, the jury, are the collective conscience of the community.   Use your common sense.  Consider whether the defendants took unfair advantage of the plaintiffs and whether the plaintiffs were defenseless.  Consider the defendants' conduct in light of all the circumstances.[19]

A "deceptive" act or practice is simply one that has the capacity to deceive.  An act or practice is deceptive if it could reasonably cause a person to act differently from the way he or she would act if he or she knew the truth about the matter.  It includes any communication made with the intent to deceive another person.  However, intent to deceive is not always necessary.  A negligent or careless misrepresentation of fact, the truth of which was reasonably capable of ascertainment, may also be a deceptive act or practice.[20]

[18] Source: CIVJIII MA-CLE 16-3
[19] Source: CIVJIII MA-CLE 16-4.1
[20] Source: CIVJIII MA-CLE 16-4.2

Footnote continued on next page …

There is no binding definition of what constitutes an unfair practice under the Massachusetts Consumer Protection Act.  The existence of unfair acts and practices must be determined from the circumstances of each case.

The Code of Massachusetts Regulations, 940 CMR § 3.10(16), states that "The use of language in any form which has the tendency or capacity to mislead or deceive students, prospective students, or the public is an unfair and deceptive trade practice."

To help you determine whether an act or practice is "unfair," ask yourself these three questions:

First, does it fall within some established concept of unfairness?  For something to be unfair, it does not need to violate some other law or government regulation; however, whether or not it does is something you may consider.

Second, ask yourself whether the defendants' act or practice was immoral, unethical, oppressive, unscrupulous, or otherwise unconscionable.

Third, consider whether the defendants' act or practice would cause substantial injury to the public or to consumers in general.[21]

### e)    Defendants Willfully Committed Unfair or Deceptive Practice

If the defendants' actions were unfair or deceptive, then you must go on to decide whether the defendants willfully or knowingly committed that unfair or deceptive act or practice. The plaintiffs have the burden of proving, by a fair preponderance of the evidence, that the

---

Footnote continued from previous page …

[21] Source: CIVJIII MA-CLE 16-4.3

defendants had a subjectively culpable state of mind.  "Willful" or "knowing" requires something more than mere negligence.[22]

An unfair or deceptive statement is willful if the speaker represents a fact to be true without knowing whether it is true or not and with reckless disregard for whether it is true or not. An unfair or deceptive statement is knowing if the speaker represents a fact to be true while knowing that it is not true.[23]

### f)      Plaintiffs Suffered an Injury

If the defendants willfully committed an unfair or deceptive act or practice, you must then determine whether the plaintiffs were "injured" by the defendants' actions or if the plaintiffs' "rights were affected" by the defendants' violation of the CPA.  A plaintiff is deemed to have been "injured" if the plaintiff suffered an invasion of any legally protected interest as a result of the defendant's conduct. In deciding whether the plaintiffs were "injured," you may consider whether the plaintiffs sustained any loss of money or property or emotional upset as a result of the defendants' actions.[24]

### g)      Damages

If the defendants committed an unfair or deceptive act or practice, and you determine that the plaintiffs were injured by the defendants' actions, you must determine what amount of money would fully compensate the plaintiffs for that injury. In deciding whether the plaintiffs were injured and, if so, what fair compensation for that injury would be, you may consider whether the plaintiffs sustained a loss of money or property as a result of the defendants' actions. In addition, you may compensate the plaintiffs for what the courts have called "the invasion of any legally

---

[22] Source: CIVJIII MA-CLE 16-7.4

[23] Source: CIVJIII MA-CLE 16-7.5
[24] Source: CIVJIII MA-CLE 16-5.1

protected interest." What that means is that the plaintiffs also are entitled to be compensated for injury, such as emotional upset the plaintiffs sustained, in addition to the loss of use of money or property. Once you have considered all of these factors, you should determine what amount of money will fully and fairly compensate the plaintiffs for the injury the plaintiffs sustained as a result of the defendants' actions.[25]

### h)    Defendant's Bad Faith Response to Plaintiff's Demand Letter-Section 9 Action

If you have found that the defendants committed an unfair or deceptive act or practice willfully or knowingly, or that the defendants' response to the plaintiffs' demand letter was made in bad faith, then the plaintiffs are entitled to an award of up to three times, but no less than two times, the actual damage you have determined the plaintiffs to have sustained. You must, therefore, determine whether the damage caused by the defendants' unfair or deceptive act or practice should be doubled or trebled.

Multiple damages are designed to impose a penalty on the defendants. The purpose of multiple damages is to deter callous and intentional violations of the law and to promote prelitigation settlements by making it unprofitable for defendants to ignore a plaintiff's request for relief. Multiple damages are not awarded to compensate particular harmed individuals. In determining whether the actual damages should be doubled or trebled, take into consideration all the relevant circumstances, including the character and degree of the wrong as shown by the evidence, the necessity of preventing similar wrong, and each defendant's degree of culpability.

If you have found that the defendants committed an unfair or deceptive act or practice willfully or knowingly, or that the defendants' response to the plaintiffs' demand letter was made

---

[25] Source: CIVJIII MA-CLE 16-6.2

in bad faith, then the plaintiffs are entitled to an award of attorneys' fees and costs incurred in bringing this action[26].

## D.     BREACH OF CONTRACT

### 1.     Mutual formation and assent

The plaintiffs must first prove that there is a binding contractual relationship between the parties.

A contract exists when the parties agree to terms and conditions of mutual promises. A contract may be based upon oral or written promises.  This is often referred to as a "meeting of the minds."  "Mutuality" means that the parties communicated their agreement to the terms and conditions in the same sense and at the time of the alleged contract.  There is no contract formed if only one party intends to be bound, or if the parties intend to be bound only at a later time.

Agreement can be shown by written or spoken words, or by some act or omission which is intended to communicate agreement, and which indicates to the other party (or parties) that it is intended to communicate agreement.  The law presumes that a person intends the natural and probable consequences of his or her acts.

In order to determine whether a binding contract existed in this case, you must decide whether the parties intended to agree to the contract's terms as of the time of the contract.[27]

### 2.     Formation

In order to prove the existence of a contract with the defendants, the plaintiffs must prove each of the following three elements by a preponderance of the evidence:

1. That an offer was made;

2. That the offer was accepted; and

---

[26] Source: CIVJIII MA-CLE 16-7.12

[27] Source: CIVJIII MA-CLE 14-1.1

3. That the plaintiffs and the defendants each gave up something of value, or promised to give up something of value.  This is referred to under the law as "consideration."[28]

### 3.  Offer and Acceptance

The first two determinations you must make are whether anyone in this case made an offer, and if so, whether the other side accepted the offer.  A contract requires both an offer and acceptance of the offer.

An offer is an expression of willingness or desire to enter into a contract made with the intent that if the other party accepts the offer, then there is a contract.  The offer must state with reasonable certainty what is to be exchanged between the parties. An offer may be made orally or in writing, or even by a person's conduct.  What is important is that the offer be made in such a way as to justify another person in understanding that his or her acceptance of the bargain will bind both parties to the terms of the offer.

Acceptance of an offer is an expression of willingness or desire to assent to the terms of the offer.[29]

### 4.  Consideration

Consideration is something that is given in exchange for an offer.  To establish consideration, the plaintiffs must prove a benefit to the maker of the promise, or a loss, trouble, or inconvenience to, or a charge or obligation resting upon, the party to whom the promise is made.[30]

### 5.  Breach

---

[28] Source: CIVJIII MA-CLE 14-1.2

[29] Source: CIVJIII MA-CLE 14-1.3
[30] Source: CIVJIII MA-CLE 14-1.8

A breach of contract is a failure to comply with one or more terms of the contract.   In order to recover for breach of contract, the nonbreaching party must have completely performed his obligations.   Where one party to a contract has failed to perform his obligations, then as a matter of law the other party is thereafter excused from performing his contractual obligations.

In order to prevail on a breach of contract claim, Mr. White and Henry must prove the following four elements by a preponderance of the evidence:

> 1. That there is a contract,
>
> 2. That Mr. White and Henry performed their obligations under the contract (or are excused from performance),
>
> 3. That the defendants breached the contract, and
>
> 4. That Mr. White and Henry suffered damages as a result of the breach of contract.[31]

### 6.        Third-Party Beneficiary

Usually, someone who is not a party to a contract may not bring suit for breach of the contract.   However, if the contract was made for his direct benefit, that person is called a third-party beneficiary and has a right to enforce the contract provision in his favor.

Henry must demonstrate that he was the intended beneficiary of the contract between Mr. White and the Fessenden School.   He is an intended beneficiary if the parties to the contract intended that performance of the contract would result in a benefit to him.

For example, the parties to a life insurance policy intend that, on the death of the insured, the company will make a payment to the designated beneficiary.   That beneficiary may sue for payment, although the contract was between the insured and the life insurance company.[32]

### 7.        Damages

---

[31] Source: CIVJIII MA-CLE 14-1.19
[32] Source: CIVJIII MA-CLE 14-1.23

The fact that I charge you on the measurement of damages is not, and should not be considered by you, as any indication that I think damages should be awarded.  I give you these instructions on damages solely because I am required to charge you on all phases of the case that you might have to consider.

If the defendant did breach the contract, you must then decide the amount of the plaintiffs' damages, if any.  Before the plaintiffs can recover damages under any theory of recovery, they must prove that the defendant's breach caused damages.

### a)      Basic Principle

The basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract.

In order to recover damages against the defendants, the Mr. White and Henry must demonstrate that the damages complained of were caused by the defendants' conduct.

The plaintiffs are entitled to recover damages sufficient to give them the benefit of their contractual bargain, as long as such damages are reasonably proved.  In other words, Mr. White and Henry are entitled to those damages that would put them in a position to obtain that which they had bargained to obtain, so far as compensation in money can be computed by rational methods upon a firm basis in fact.

If you are to award the damages, you may not include any amount for interest.  The law automatically provides for interest, and the clerk of courts will calculate the appropriate amount.[33]

### E.    TORTIOUS INTERFERENCE WITH A CONTRACTUAL OR ADVANTAGEOUS RELATIONSHIP

---

[33] Source: CIVJIII MA-CLE 14-3.1

Mr. White and Henry also claim in this case that they had a contract with the Fessenden School, and that defendants Peter Drake, Daniel Kiley and Wendy Pearre improperly interfered with the Fessenden School's performance of its obligations under this contract or advantageous relationship between Henry and the Fessenden School.

In order to prevail on this claim of improper interference with a contractual relationship or advantageous relationship, the plaintiffs must prove by a preponderance of the evidence that:

1. the plaintiffs had a binding contract with the Fessenden School;

2. defendants Peter Drake, Daniel Kiley and Wendy Pearre knew about the contract and intentionally induced or persuaded the Fessenden School not to perform its obligations under the contract;

3. the individual defendants' interference with the Fessenden School's performance of its obligations under the contract, in addition to being intentional, was improper in motive or in means;

4. Mr. White and Henry were harmed by the individual defendants' actions.[34]

### 1.      Requirement of a Binding Contract

In order for you to find for the plaintiffs on their claim against the individual defendants, you must find that the plaintiffs were a party to a valid contract with the Fessenden School in full force and effect at the time of the actions complained of, which contract was breached by the Fessenden School as a result of the defendants' conduct.

A contract is simply an agreement between two or more persons, called "parties," to do or not to do a certain thing for "consideration," or a thing of value. Mutual promises to do or not to do a certain thing in the future are sufficient consideration for each other.

---

[34] Source: CIVJIII MA-CLE 12-4.1

A contract may be oral or in writing. It may also be express or implied. An "express contract" is one actually stated or written in words. An implied contractual term is one which is not expressly stated in the contract but which, from the sense of the agreement as a whole, appears to have been intended by the parties to be a part of their contract.

If all the basic elements required by law for there to be a contract are present, a contract is deemed to be valid and binding if it is not illegal, in restraint of trade, or otherwise opposed to public policy. A contract is considered to be in full force and effect if, at the time in question, the agreement was in effect between the parties and not terminated, expired, or otherwise rendered ineffective.[35]

## 2.    Knowledge Requirement

To find for the plaintiffs, you must also find that the individual defendants knew of the existence of the contract or advantageous relationship between the plaintiffs and the Fessenden School. For this purpose, the defendants need not have had actual knowledge of this specific contract or its precise terms. The requirement of knowledge may be found if, from the facts and circumstances of which the defendants had knowledge, the defendants should have known of the existence of the contractual relationship between the plaintiffs and the Fessenden School.[36]

## 3.    Intent Requirement

A person's intent is his or her objective or purpose. Under the law, an actor is presumed to have intended the consequences of his or her act if the actor either desired to cause those consequences or knew that the consequences were certain, or substantially certain, to result from his or her act. In the present case, therefore, in determining whether the defendant intended to interfere with the Fessenden School's performance of the contractual obligation owed to the

---

[35] Source: CIVJIII MA-CLE 12-4.2
[36] Source: CIVJIII MA-CLE 12-4.3

plaintiffs, you should consider whether the defendants either desired to achieve that result or knew that such interference was certain, or substantially certain, to result from his or her actions. An actor may be found to have intended a result even if he or she did not act for the purpose of bringing about the result, so long as the actor knew that the result was certain, or substantially certain, to follow from his or her actions.[37]

### 4.      Damages—Defendants' Profits

If you find for the plaintiffs on their claim for tortious interference with a contractual or advantageous relationship, you may award the plaintiffs damages equaling the profits made by the defendants as a result of the defendants' conduct.[38]

## F.      NEGLIGENCE

### 1.      Duty

The first element the plaintiffs must prove by a preponderance of the evidence is that the defendants owed them a duty of care.

You are to interpret the word "duty" as an obligation.  Duty means an obligation to conform to a particular standard of conduct toward another person which is recognized and enforced in the law.

It is for you to determine whether the defendant did exercise the required care or whether the defendant breached this duty.[39]

### 2.      Breach

---

[37] Source: CIVJIII MA-CLE 12-4.4
[38] SOURCE: CIVJIII MA-CLE 12-4.7
[39] SOURCE: CIVJIII MA-CLE S-2-1.1

The second element which the plaintiffs must prove by a preponderance of the evidence is that the defendants did not exercise the required amount of care under the circumstances, that the defendants breached their duty of care, or, in other words, were negligent.

Since there is a duty to exercise reasonable care, the plaintiffs must prove by a preponderance of the evidence that the defendants failed to exercise the required amount of care.

The standard of care in negligence cases is how a person of reasonable prudence would act in similar circumstances.[40]

### 3.      Causation

If you decide that the defendants were negligent, you must then consider whether the defendants' negligent conduct caused or worsened the plaintiffs' injuries.  If you find that the defendants were negligent, they are liable to the plaintiffs if their negligence caused the plaintiffs' harm.  To meet their burden, the plaintiffs need only show that there was greater likelihood or probability that the harm complained of was due to causes for which the defendants were responsible than from any other cause.

The defendants' conduct was the legal cause of the Mr. White's and Henry's injury if it was a substantial factor in bringing it about and without which the harm would not have occurred.

It does not matter whether other concurrent causes contributed to the plaintiffs' injuries so long as you find that the defendants' conduct was a substantial factor.  "Substantial" is used here in its ordinary sense which requires no further elaboration.

Furthermore, to establish causation, the plaintiffs must show that the harm was reasonably foreseeable to a person in the defendants' position at the time of the defendants'

---

[40] SOURCE: CIVJIII MA-CLE 2-1.3

negligence.  The plaintiffs do not have to establish that the defendants foresaw, or should have foreseen, the exact manner in which the harm occurred; but they must show that this harm was a natural and probable consequence of the defendants' negligence.  When we say that something is foreseeable, we mean that it is a probable and predictable consequence of the defendants' negligent acts or omissions.  Thus, if the defendants should have realized that their conduct might cause harm to a person in the plaintiffs' position in substantially the manner in which it was brought about, the injury is regarded as the legal consequence of the defendants' negligence. However, the fact that the defendants, at the time of the negligent conduct, neither realized nor should have realized that it might cause harm to another in the particular manner in which the harm occurred, is not of itself sufficient to prevent the defendants from liability if the conduct was negligent and was a substantial factor in bringing about the harm.  If the defendants should have realized that their conduct might cause harm to another in substantially the manner in which it was brought about, the harm is regarded as the legal consequence of the defendants' negligence.

What that means is that the plaintiffs are not required to show the exact cause of their injuries or to exclude all possibility that they resulted without the fault of the defendants.

What the plaintiffs must show is that the harm was more likely due to the defendants' negligence than to some other cause.[41]

### 4. Damages

The fourth element the plaintiffs must prove is damages. You will only reach the issue of damages if you find that the defendants were negligent and that the defendants' negligence caused injury to the plaintiffs.

---

[41] SOURCE: CIVJIII MA-CLE S-2-1.8

As with all the other elements, the plaintiffs bear the burden of proving their damages by a fair preponderance of the evidence.

The purpose of the law in awarding damages is to compensate an injured person for the losses incurred because of another person's negligent conduct.

The object is to try to restore the person to the position he or she would have been in had the wrong not occurred.  Damages are to be awarded to the plaintiffs as a fair and reasonable compensation for the legal wrong done to them by the defendant.

You must put aside your personal feelings during your deliberations and decide this case as the evidence and law dictate.

There is no special formula under the law to assess the plaintiffs' damage.  It is your obligation to assess what is fair, adequate, and just.  You must use your wisdom and judgment and your sense of basic justice to translate into dollars the amount which will fairly and reasonably compensate the plaintiffs for their injuries.  You must be guided by your common sense and your conscience.

In determining the amount of damages which the plaintiffs are entitled to recover, there are certain areas which you should take into consideration.

### a)      Pain and Suffering

The first area is pain and suffering. Pain and suffering are of two types: physical pain and suffering, and mental pain and suffering.

For physical pain and suffering, you are to consider the areas of the body in which you find the plaintiffs physically injured.  You are to take into account the past pain and suffering endured by the plaintiffs since the date of the injuries, the present pain and suffering caused by the injuries, and any future pain and suffering which were proved with reasonable medical

probability.  In order to recover for mental pain and suffering in a negligence action, the plaintiff must first establish that he suffered from physical pain and suffering.

Mental pain and suffering includes any and all nervous shock, anxiety, embarrassment, or mental anguish resulting from the injury.  Also, you should take into account past, present, and probable future mental suffering.

Taking into consideration the nature of the injury, you are to determine what would be a fair and reasonable figure to compensate the plaintiffs.  You may consider the extent to which the plaintiffs' injuries have caused them a loss of pleasures which they otherwise probably would have had in the form of work or play or family life or whatever.  The plaintiffs are entitled to full compensation for any reduction in the enjoyment of life which you conclude has resulted or probably will result from the defendants' negligence.

To arrive at a monetary figure for the plaintiffs' pain and suffering, you must use your own good sense, background, and experience in determining what would be a fair and reasonable figure to compensate for past, present, and future suffering such as you find has been proved by the evidence.

### b)      Medical Expenses

The next area of damages which you are to consider is medical, hospital, and nursing expenses incurred by the plaintiffs on account of their injuries.

The plaintiffs are entitled to be compensated for those expenses which were reasonable in amount and which were reasonably necessary.  Therefore, you must determine whether the expense was reasonably related to the treatment and care of the plaintiffs, and whether the charge itself was reasonable.

You may also consider and allow the plaintiffs a fair, reasonable sum for damages that reasonably are to be expected in the future as a result of the defendants' negligence.

The plaintiffs are entitled to recover for whatever expenses they prove are reasonably required to diagnose and treat any condition brought on by the incident or the resulting injuries. The plaintiffs are entitled to recover for the reasonable costs of cure, alleviation of suffering or limitation, and control of disability related to the defendants' negligence.

### c)      Calculating Total Damages

Once you have calculated each of these areas of damages, pain and suffering, past medical expenses, and any future medical expenses, you should add up each of these damages to arrive at the total award.  There must not be any overlapping of the various elements constituting the damages. The total sum must be fair compensation for the entire injury, no more and no less.[42]

## G.      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### a)      Elements in general

In this case, the plaintiffs are claiming that the defendants intentionally or recklessly caused infliction of emotional distress when they mistreated Henry because of his diagnosed medical condition and effectively forced him out of the Fessenden School in violation of the law. In order to recover, the plaintiffs must prove by a preponderance of the evidence that:

> 1. The defendants intended to inflict emotional distress or that the defendants knew or should have known that emotional distress was likely to result from their conduct;
>
> 2. The defendants' conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community;
>
> 3. The defendants' conduct caused the plaintiffs' emotional distress; and

---

[42] SOURCE: CIVJIII MA-CLE 2-1.13

4. The emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure it.[43]

### b)      Intent

In order to prove intentional infliction of severe emotional distress, the plaintiffs must prove that the defendants acted either with the desire or knowledge that emotional distress would result from their conduct or that they should have known that their conduct would cause the plaintiffs to suffer emotional distress.[44]

### c)      Extreme and Outrageous Conduct

"Extreme and outrageous" means a high order of recklessness, ruthlessness or deliberate malevolence.  What is extreme and outrageous is for you to consider, given all the facts.  For instance, outrageous behavior may be found by a repeated series of incidents, even if those incidents, when taken individually, might not be sufficiently extreme.  Also, conduct otherwise reasonable may give rise to liability when it is directed at a person known to the defendants to be particularly susceptible to emotional distress because of some physical or emotional vulnerability.[45]

### d)      Causation

If you find that defendants' extreme and outrageous conduct was intended to inflict emotional distress or that the defendants knew or should have known that emotional distress was likely to result from their conduct, you must next determine whether that intended conduct was the cause of the plaintiffs' injuries.

### e)      Damages

---

[43] SOURCE: CIVJIII MA-CLE S-8-1.1
[44] SOURCE: CIVJIII MA-CLE 8-1.1
[45] SOURCE: CIVJIII MA-CLE 8-1.2

If you find that the plaintiffs have satisfied each and every element of their claim for intentional infliction of emotional distress, you must consider the issue of damages. The rule of damages is a practical instrumentality for the administration of justice. Its object is to afford the equivalent in money for the actual loss caused by the wrong of another. You must consider what amount of money would be full, fair and reasonable based on all the evidence. The amount of damages should be based on just and reasonable inferences, even though there may be an element of uncertainty in your determination. It is not necessary for the plaintiffs to prove that physical injury resulted from the severe emotional distress.[46]

### H.   COUNT VIII—VIOLATION OF THE MASSACHUSETTS CIVIL RIGHTS ACT

#### a)   Statement of the Cause of Action

The plaintiffs in this case allege that the defendants violated the Massachusetts Civil Rights Act (G.L. c. 12, §§ 11H and 11I), which provides, in pertinent part:

> Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, [by any person by means of threats, intimidation or coercion], may [bring an action for money damages].

In order to prevail on a claim under the Massachusetts Civil Rights Act, the plaintiffs must prove by a preponderance of evidence the following three elements:

> 1. His exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth

> 2. has been interfered with, or attempted to be interfered with, by the defendants, and

---

[46] SOURCE: CIVJIII MA-CLE 8-1.3

3. the interference or attempted interference was by threats, intimidation, or coercion.[47]

### b)      Existence of a Secured Right

To establish the first element of their claim, the plaintiffs must prove by a preponderance of the evidence that they were engaged in the exercise or enjoyment of rights secured by the Constitution or by the laws of the United States or of the Commonwealth.

The term "secured" means "created by, arising under or dependent upon," rather than "fully protected."   A right is secured by the Constitution or laws if it emanates from the Constitution or from the laws; if it finds its source in the Constitution or the laws of the United States or of the Commonwealth.

In this case, the plaintiffs allege that they were engaged in or enjoying the right to full and equal use of all places of public accommodation free from any distinction, discrimination, or restriction on account of race, color, religious creed, national origin, sex, deafness, blindness, ancestry, or any physical or mental disability.   That right is secured by the Constitution or the laws of the United States by the Americans with Disabilities Act, and by the Commonwealth through the Massachusetts Public Accommodations Law.[48]

### c)      Interference or Attempted Interference

To establish the second element of their claim, the plaintiffs must prove by a preponderance of the evidence that the defendants interfered with or attempted to interfere with the plaintiffs' right to access public accommodation free from any distinction, discrimination, or restriction on account of race, color, religious creed, national origin, sex, deafness, blindness, ancestry, or any physical or mental disability.

To "interfere" means to hinder, impede, intrude, or meddle in the affairs of another.

---

[47] SOURCE: CIVJIII MA-CLE 19-4
[48] SOURCE: CIVJIII MA-CLE 19-4.1

The Massachusetts Civil Rights Act contains no requirement that a person specifically intend to deprive another of a secured right in order to be liable under that Act. Thus, the plaintiffs are not required to prove that the defendants specifically intended to interfere or attempted to interfere with their engagement in or enjoyment of a secured right.[49]

### d) Threats, Intimidation, or Coercion

The third element of the plaintiffs' claim is that the defendants interfered with or attempted to interfere with the plaintiffs' enjoyment of secured rights by threats, intimidation, or coercion.

The Massachusetts Civil Rights Act protects rights secured by the Constitution or laws of the United States, or rights secured by the constitution or laws of this Commonwealth, only against interference or attempted interference "by threats, intimidation or coercion." Those words must be applied according to their natural connotation, that of forcing submission by conduct calculated to frighten, harass, or humiliate.

When considering whether the defendants threatened, intimidated, or coerced Henry, you are to consider the issue with an objective standard, that is, whether a reasonable person in the Henry's circumstances would be threatened, intimidated, or coerced by the defendants' conduct. In determining how a reasonable person would react in the same circumstances, you may consider how other persons actually responded to events in this case.

In order to recover under the Massachusetts Civil Rights Act, the plaintiffs must prove by a preponderance of the evidence that the interference or attempted interference with the secured right involved an actual or potential physical confrontation accompanied by a threat of harm.

---

[49] SOURCE: CIVJIII MA-CLE 19-4.2

The term "threat" involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.

The term "intimidation" means the putting in fear for the purpose of compelling or deterring conduct.

The term "coercion" means "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Stated differently, "coercion" is the active domination of another's will, or the use of physical or moral force to compel another to act or assent, or to refrain from acting or assenting.

The defendants' fear of business disruption, fear for economic loss, or fear for physical safety are not justifications for acting in violation of the Massachusetts Civil Rights Act.[50]

### e)    Vicarious Liability

If you find that defendants Drake, Kiley and Pearre violated the plaintiffs' civil rights, you may find that defendant Fessenden School is liable for that violation, as the individuals were employees or agents who were, at the time of the violation, acting within the scope of their employment.[51]

### f)    Damages

If you determine that defendants have violated plaintiffs' civil rights under this claim, plaintiffs are entitled to compensatory monetary damages and attorney's fees and costs.[52]

## I.    EXEMPLARY DAMAGES

If you find that plaintiff Henry White was discriminated against based on his actual or perceived disability, you may award exemplary damages.  Exemplary damages are damages

---

[50] SOURCE: CIVJIII MA-CLE 19-4.3
[51] SOURCE: CIVJIII MA-CLE 19-4.4
[52] SOURCE: CIVJIII MA-CLE 19-6

awarded in addition to actual damages when the defendant acted with recklessness, malice, or

deceit.  Exemplary damages are intended to punish and thereby deter blameworthy conduct.[53]

### J.    INTEREST ON DAMAGES AWARDED

If you award pecuniary or consequential damages to plaintiffs, there shall be added by the

clerk of court to the amount of damages interest at a rate of 12% per annum from the date of the

commencement of the action, even if such interest brings the amount of the verdict beyond the

maximum liability imposed by law.[54]



Respectfully submitted,

DICKINSON WRIGHT PLLC


By: _/s/ Leslie A. F. Calhoun_____
    George P. Butler, III (BBO #541820)
    Leslie A. F. Calhoun (admitted *pro hac vice*)
Attorneys for Plaintiffs
500 Woodward Avenue, Suite 4000
Detroit, MI  48226
(313) 223-3500


Dated:  September 17, 2008

---

[53] SOURCE:  M.G.L.A. 93 § 103(b); M.G.L.A. 12 § 11I; MASS. CONST. ART. CXIV; ADA.
[54] SOURCE:  M.G.L.A. 231 § 6B

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing (NEF).  There are no non-registered participants in this matter requiring paper copies.

<div style="margin-left: 40%;">

s/Leslie A. F. Calhoun_____

George P. Butler III (BBO #541820)

Leslie A. F. Calhoun (admitted *pro hac vice*
        MI P67659)

DICKINSON WRIGHT PLLC

Attorneys for Plaintiffs

500 Woodward Avenue – Suite 4000

Detroit, Michigan  48226-3425

(313) 223-3500

Fax:  (313) 223-3598

E-Mail:  lcalhoun@dickinsonwright.com

</div>

Dated: September 17, 2008

DETROIT 35563-1 1057388v2