Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

———————————

Nos. 09-1259, 09-1420, 09-1430

H. MARK WHITE, individually
and as next friend for his son H.T.W.,

Plaintiff, Appellee,

v.

THE FESSENDEN SCHOOL, PETER DRAKE, DANIEL KIELY,
and WENDY PEARRE,

Defendants, Appellants,

and

TUCKER, HEIFETZ & SALTZMAN, LLP, and
WILMER CUTLER PICKERING HALE AND DORR LLP,

Appellants.

———————————

ON APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

———————————

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

———————————

George P Butler III with whom Phillip J. De Rosier, Leslie
A.F. Calhoun, Robert Y. Murray, and Ramsey & Murray were on brief
for plaintiffs-appellees H. Mark White and H.T.W.
   Robert S. Frank Jr. with whom William P. Rose and Tucker,
Heifetz & Staltzman, LLP were on brief for defendants-appellants
The Fessenden School and Peter Drake, Daniel Kiely, and Wendy

Pearre and appellant Tucker, Heifetz & Saltzman, LLP.
    <u>Mark C. Fleming</u> with whom <u>Jerome P. Facher</u>, <u>Michael R. Heyison</u>, and <u>Wilmer Cutler Pickering Hale and Dorr LLP</u> were on brief for appellant Wilmer Cutler Pickering Hale and Dorr LLP.

———————————————

December 28, 2009

———————————————

**Per Curiam**.  The issue before us is whether the parties in this case reached an enforceable settlement agreement.  The underlying case concerns claims brought by a student, now a sixth grader, and his father against the student's former school.  It is not necessary to describe those claims to decide this appeal.

On September 22, 2008, the day trial was to start (over a year after the case was filed), the experienced trial judge asked the parties if they wanted to make a last effort to settle the case.  They said yes.  Counsel for the plaintiffs reported the parties had begun negotiations shortly before and they believed they had achieved an agreement in principle on a noneconomic term but were far apart on any economic terms.  In response to the court's question as to whether the only issue remaining unresolved was the amount of a monetary settlement, counsel for the school said,

> Well, we have a lot of issues to work out on that noneconomic issue . . . so if we got there, we're certainly going to request assistance, perhaps assistance from The Court; but in principle we had a deal on that as of the week  before the pretrial.

The parties then spent some time trying to negotiate the economic terms.  The court, wisely, did not participate in those negotiations.  Ultimately, the parties reported they had reached an agreement on the economic terms that was "subject to finalization of the noneconomic issues" and there was work they "still ha[d] to do" on one of those issues.  The court replied that "we will report

-3-

the case closed, as having been settled, and give you two months to move to reopen it if for some reason or other, you're unable to finish the paperwork."

Perhaps in a sense of optimism, the parties told the court that it could enter a settlement order but asked the court to retain jurisdiction over enforcement. The court asked, "Well in what way? How am I going to enforce it?" Plaintiffs' counsel replied that there could be a dispute over "it." He suggested one reason for the retention of jurisdiction was that the parties could need the assistance of the court to work out the noneconomic terms. There was no written agreement at this or any later point.[1]

The court then entered a settlement order dated September 22, 2008.[2] However, the optimism of the parties that they had reached agreement on the noneconomic terms was misplaced. One of the noneconomic terms concerned what the parties referred to as a

---

[1]    Because of the sensitive nature of the information, the parties asked the court to extend a sealing order and it did so. For that reason as well, we do not go into details.

[2]    The settlement order said,

> The court having been advised on September 22, 2008 by counsel for the parties that the above action has been settled:
> IT IS ORDERED that this action is hereby dismissed without prejudice to reconsideration and possible re-opening if within <u>60</u> days of this order a motion is filed which represents that the terms of the settlement agreement have not been performed and there is good cause for the non-performing party or parties to have failed to perform.

"reenrollment contract," by which the parties meant very different things.

On November 12, 2008, the plaintiffs filed a "motion to enforce the September 22, 2008 settlement or, in the alternative, to reopen the case and proceed to trial."  The defendants filed an opposition to the plaintiffs' motion, which took the position that a settlement agreement had been reached in September but the plaintiffs were departing from that agreed "reenrollment contract" in two material respects.  They also joined the plaintiffs' alternative request that the court reopen the case for trial.  It was clear from the parties' filings that they fundamentally disagreed about the substantive content of any "reenrollment contract," which standard form of competing contracts was involved, what consequences flowed from it, and how the contract could be used.

The court convened a nonevidentiary hearing on January 5, 2009, and asked what matters were in dispute, including the dispute about the reenrollment contract.  Saying this was the last help it could give the parties, the court then offered its own version of what the reenrollment contract was and told plaintiffs' counsel to submit to the court a draft order embodying that version.  The parties spent the hearing jockeying for position to get the court to endorse and enforce each party's version of the reenrollment contract.  No one explicitly discussed the alternate relief of

-5-

sending the case back for trial because there was no agreed settlement. With no settlement to enforce, however, the only thing the court could do was order the case to trial. Indeed, the court said that if there were further proceedings, they would be before a different judge.

Plaintiffs' counsel, as the court had requested, submitted a draft order. In our view it went well beyond the court's offered resolution of the disputed term "reenrollment contract;" it also sanctioned counsel for the school, ordering counsel to pay the attorneys' fees and costs the plaintiffs incurred bringing the motion to enforce. The defendants protested, but the court, on January 22, 2009, entered the plaintiffs' five-page proposed order as an "Order of Settlement and Judgement." As to the sanctions, the court held no hearing, and it made no separate findings why sanctions were appropriate or that defense counsel had acted in bad faith or in violation of any order. The court also did not respond to the arguments of the law firm that was the school's general counsel, but not the school's litigation counsel, that the firm had no notice it might be sanctioned and that there was no basis to sanction it. Final judgment was entered on April 6, 2009, on the basis of the January 22 order. The school and the sanctioned counsel have appealed from that judgment, which embodies the January 22 order.

We have carefully reviewed the record in this case and conclude that the parties never had an enforceable settlement agreement because they never agreed on the content, consequences, or use of the so-called reenrollment contract.  There is no doubt that these disputes over the "reenrollment contract" were about a material term of the contract; indeed, the disagreement may have gone to the most material issues in the underlying litigation.  To the extent the trial court thought there was no ambiguity in the parties' previous use of the term "reenrollment contract" and so there was no material disagreement, that was plain error, whether viewed as an issue of law or of fact.  See, e.g., Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008) (district courts may not summarily enforce settlement agreements when a genuine dispute over the agreement's material terms exists); Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999) (same); Warner v. Rossignol, 513 F.2d 678, 683 (1st Cir. 1975) (same); see also Magallanes v. SBC, 472 F.3d 923, 924 (7th Cir. 2006) ("A valid and enforceable settlement agreement requires a meeting of the minds on all material terms.").  Both the September 22 statements and the later filings established that there was only an ongoing dispute and no agreement.

It is so clear there was no settlement the court could enforce that there is no point in remanding this case for an evidentiary hearing.  See F.A.C., Inc. v. Cooperativa de Seguros de

Vida de P.R. (F.A.C. I), 449 F.3d 185, 194 (1st Cir. 2006) (considering whether the parties "had testimony worth presenting" about a settlement's terms when deciding not to remand for an evidentiary hearing); see also Quint v. A.E. Staley Mfg. Co., 246 F.3d 11, 15 (1st Cir. 2001) ("There are certainly instances in which no oral contract is formed where material terms are not yet agreed upon, and no agreement is reached until there is a written agreement embodying those material terms.") (citing Salem Laundry Co. v. New England Teamsters and Trucking Indus. Pension Fund, 829 F.2d 278, 280-81 (1st Cir. 1987)).

It is true that sometimes courts may construe the terms of a settlement, particularly when the judge has personal knowledge of the negotiations. E.g., F.A.C. I, 449 F.3d at 192, 194. Here the judge did not have personal knowledge of the parties' negotiations, so that could not have been the basis for the court's decision. See, e.g., Malave, 170 F.3d at 220-21 (holding that a district court could not summarily enforce a settlement when it was obvious from the pleadings that a dispute existed and when the court had no personal knowledge of the settlement negotiations).

It is permissible but often unwise for counsel to inform the court a case is settled when they have no more than an oral settlement agreement. F.A.C. I, 449 F.3d at 187; see also, e.g., Quint, 246 F.3d at 15. That situation frequently leads to proceedings to "clarify" what the "agreement" was. See, e.g.,

F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R. (F.A.C. II),
563 F.3d 1, 3-6 (1st Cir. 2009) (describing the long history of
disputes over the meaning of an oral settlement that forced the
district court and this court to interpret its terms and that
culminated in sanctions that this court vacated).

The district court was attempting to be helpful and had
been patient and shown restraint throughout a contentious case.
But in the absence of a trial and a liability finding, it was
beyond the power of the district court to impose its own resolution
of material disputed issues that the parties did not agree to, and
it could not do so under the rubric of a settlement order.  As
there was no enforceable settlement, there was no possible basis
for sanctions orders against the defendants or any of their
counsel.  We need not address the other objections to the sanctions
order.  See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)
("[A] court may assess attorney's fees when a party has 'acted in
bad faith, vexatiously, wantonly, or for oppressive reasons.'"
(quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S.
240, 258-59 (1975))).

We reverse and vacate.  We remand this case to a
different judge for trial.  Perhaps the considerable legal talent
which counsel has brought to this appeal can still resolve this
matter short of trial.

No costs are awarded.